IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER J.,[1] | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| v. | : | No. 24-1863 |
| | : | |
| FRANK BISIGNANO, | : | |
| **Commissioner of Social Security,** | : | |
|     *Defendant.* | : | |

MEMORANDUM OPINION

**HON. JOSÉ RAÚL ARTEAGA**                                                                      May 19, 2025
**United States Magistrate Judge**[2]

      The Commissioner of the Social Security Administration, through an Administrative Law Judge ("ALJ"), determined that Jennifer J. was not disabled and denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and for Supplemental Security Income ("SSI") under the Act's Title XVI, 42 U.S.C. §§ 1381-1383. Jennifer J. seeks review of the decision pursuant to 42 U.S.C. § 405(g), challenging the ALJ's assessment of her major depressive disorder and generalized anxiety disorder as not severe and his consideration of the

---

[1] Jennifer J. is referred to solely by her first name and last initial in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Apr. 29, 2025).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4.)

1

impact of her mild mental limitations on her ability to perform her past relevant work. (*See* ECF 9.) The Commissioner contends that the benefits denial should be affirmed because the ALJ gave a valid explanation for his findings and they were supported by substantial evidence. (*See* ECF 10.)

After careful review of the entire record, Jennifer J.'s request for review is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

I.   **BACKGROUND**

Jennifer J. completed twelfth grade and three years of college courses. (Tr. 37, 207). She has past relevant work as a bookkeeper and a bartender. (Tr. 46, 205-06, 212-13, 278-81, 287-89.) After she testified at a telephonic hearing where she was represented by counsel and the ALJ heard a vocational expert's ("VE") testimony, the ALJ denied her application for DIB and SSI. (*See* Tr. 14-24, 31-106, 112-33.)

Jennifer J. had not engaged in substantial gainful activity since her alleged August 15, 2019 disability onset date. (Tr. 16.) The ALJ found that she had two severe impairments—degenerative disc disease and obesity—and other non-severe impairments, including major depressive disorder and anxiety disorder. (Tr. 17-19.) He determined that Jennifer J. had the residual functional capacity ("RFC") to perform light work, except that she could "sit a total of 6 hours per workday but not more than 30 minutes at a time; stand a total of 4 hours but not more than 10 minutes at a time; and walk a total of 5 hours but not more than 30 minutes at a time." (Tr. 20.) Comparing Jennifer J.'s RFC "with the physical and mental demands" of her past relevant work as a

bookkeeper, the ALJ found that she would be "able to perform it as generally performed," and, as a result, she was not disabled. (Tr. 24)

After the Appeals Council denied Jennifer J.'s request for review (Tr. 1-6), she filed this action seeking review of the Commissioner's final decision. (ECF 1.)

## II.     LEGAL STANDARDS

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R. §§ 404.1520(a), 416.920(a). He considers whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has impairment(s) that meet or medically equal a listed impairment[3]; (4) has the capacity to do past relevant work, considering her RFC[4]; and (5) is able to do any other work, considering her RFC, age, education, and work experience. *Id.* The burden of proof is on the claimant at all steps except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). At step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform,

---

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* §§ 404.1545(a)(2), 416.945(a)(2).

3

consistent with her medical impairments, age, education, past work experience, and [RFC]." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The limited question before the Court on review of the Commissioner's final determination is not whether Jennifer J. was disabled. Rather, the Court must determine whether substantial evidence supports the Commissioner's finding that she was not and whether the Commissioner, through the ALJ, correctly applied the relevant law. *See* 42 U.S.C. § 405(g). Courts review the Commissioner's factual findings to see if "substantial evidence" exists to support them by looking at the existing administrative record.[5] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *see also* 42 U.S.C § 405(g). "[T]he threshold for such evidentiary sufficiency is not high . . . ." *Biestek*, 587 U.S. at 103. Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the

---

[5] Any legal issues the ALJ decides are subject to "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).

4

record provides substantial support for that decision." *Malloy v. Comm'r Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an "ALJ is entitled to weigh all evidence in making its finding," even where there is record evidence "suggesting a contrary conclusion"). The Court may "not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based." 42 U.S.C. § 405(b)(1). Courts defer to the ALJ's assessment of the evidence so long as the ALJ "explain[s] what evidence he [or she] found not credible and why." *Zirnsak*, 777 F.3d at 612 (citation omitted). Under the applicable regulations for claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.416.920c(a). ALJs must "articulate how [they] considered the medical opinions" and "how persuasive [they] find[ ] all of" them. 20 C.F.R. §§ 404.1520c(a) and (b)(1); *id.* §§ 416.920c(a) and (b)(1).

An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). ALJs need to "explain only the dispositive reasons for their decisions, not everything else that they considered." *Id.* Said otherwise, ALJs "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.* "[A] reviewing court must uphold even a decision of less

5

than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (citation and internal quotation omitted). Supportability and consistency are the "most important" persuasiveness factors. 20 C.F.R. § 404.1520c(b)(2); *id.* § 416.920c. "[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 WL 8437872, at *1 (W.D. Pa. Dec. 4, 2023) (citation and internal quotation omitted). An ALJ "need not reiterate the magic words 'support' and 'consistent' for each" medical opinion considered in reaching a determination. *Zaborowski*, 115 F.4th at 639. The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)). To decide whether the record was sufficiently developed the Court reads the ALJ's decision "as a whole." *Jones*, 364 F.3d at 505.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Jennifer J. bears the burden to explain how any "error to which she points could have made any difference" in the ALJ's determination. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009). Remand is not required if it would not affect the outcome of the case. *Rutherford*, 399 F.3d at 553.

### III.    DISCUSSION

Mindful of the threshold for substantial evidence—"only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" a review of the record demonstrates that substantial evidence supports the Commissioner's determinations and remand is not required. *Biestek*, 587 U.S. at 103.

#### A.    The ALJ Did Not Err by Failing to Classify Jennifer J.'s Major Depressive Disorder and Generalized Anxiety Disorder as Severe Impairments.

Jennifer J. contends that the ALJ committed a "reversible and harmful error of law by failing to classify" her major depressive disorder and generalized anxiety disorder as severe impairments at step two and by then failing to address their impact on her RFC at step five. (ECF 9 at 3.) In particular, she argues that the ALJ erred by failing to afford sufficient weight to the findings of state agency psychologists Molly Haas Cowan, Psy.D. and Virginia Carolyn Martin, Psy.D. and the mental limitations they assigned to Jennifer J.'s ability to perform work activities. (*Id.* at 7.) Jennifer J. asserts that this alleged error requires remand because it affected the ALJ's formulation of her RFC. (*Id.*) The Commissioner counters that her argument amounts only to an improper request for the Court to reweigh the evidence when substantial evidence exists to support the ALJ's finding that Jennifer J. did not have a severe mental impairment. (ECF 10 at 7.) Upon review of the record, remand is not required based on the ALJ's failure to classify Jennifer J.'s major depressive disorder and generalized anxiety disorder as severe impairments.

A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). An

7

impairment that is not severe "does not . . . ." 20 C.F.R. §§ 404.1522(a), 416.922(a). A "mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. The Commissioner will not use a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment[ ]." *Id.* Where mental impairments are at issue, the ALJ may rate the claimant's degree of limitation in "four broad functional areas" known as the "Paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Listings) §§ 12.00(A)(2)(b) and (E); *see also* 20 C.F.R. §§ 404.1522(b)(3)-(6), 416.922(b)(3)-(6). The degree of limitation is rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

The ALJ's determination that Jennifer J.'s major depressive disorder and generalized anxiety disorder were not severe is supported by substantial evidence, *i.e.*, "more than a mere scintilla," which is all that is required to affirm the Commissioner's determination on appeal. *Biestek*, 587 U.S. at 97 (citation and internal quotation omitted). Reaching his severity determination, the ALJ explained that the disorders "do not cause more than minimal limitation" in Jennifer J.'s "ability to perform basic mental work activities . . . ." (Tr. 18.) Citing to record evidence, the ALJ acknowledged that she has a history of suicidal gestures (*see* Tr. 1739-40, 2658), but he considered them "to have been acute, not chronic, episodes." (Tr. 18.) He explained that she "often denied having suicidal ideation" and that when she experienced it in July 2022 "in the context of

8

numerous stressors, . . . her psychotherapy, which she acknowledged was helpful, had been discontinued." (*Id.* (citing Tr. 997).) The ALJ found that the record did "not reveal behavioral, emotional, or cognitive abnormalities resulting in significant work-related limitations caused by any mental health impairment for a continuous 12-month[s]." (*Id.*)

According to the ALJ, Jennifer J.'s treatment records from December 2020 through February 2022 revealed that her "attention, concentration, and memory were normal on at least 20 occasions." (Tr. 18 (citing Tr. 412-620).) She "specifically denied any problems with concentration, and her cognition was found to be intact" as of January 2021. (Tr. 18 (citing Tr. 598, 602).) The ALJ cited records from Penn Behavioral Health with reports that she "was doing well" in July and September 2022 and May 2023 (*Id.* (citing Tr. 2140, 2156, 2167).) In September 2022, she had been able to help a friend by waitressing although it was "difficult." (*Id.* (citing Tr. 2156).) In February 2023, after a hospitalization and change of medication, she had improving anxiety and felt much better. (*Id.* (citing Tr. 3268).) In May 2023, Jennifer J. was looking for a job. (*Id.* (citing Tr. 2140).) In July 2023, she "had normal attention, concentration, and memory." (*Id.* (citing Tr. 2224).) The ALJ noted that, "even after an overdose," Jennifer J. "was alert and oriented with ability to answer questions and follow commands." (*Id.* (citing Tr. 889, 1740).)

The ALJ explained how he considered the Paragraph B criteria in reaching his finding regarding the severity of Jennifer J.'s mental health impairments. He explained that she had "no limitation" in "understanding, remembering or applying information." (*Id.*) He cited records showing that she did not report problems understanding or remembering things and exams demonstrating that she had "normal memory." (*Id.*

9

(citing Tr. 260, 303, 404, 449, 565, 575, 940, 2224).) He found that she had "no limitation" in interacting with others, citing function reports which listed hobbies including "visiting friends" and "entertaining," social activities including talking, playing cards, dinners, and going for coffee, and reported no "problems getting along with family friends, neighbors, or others." (*Id.* (citing Tr. 259, 304).) Jennifer J. also reported that she gets along "fine" with authority figures and had never been fired or laid off because of problems getting along with others. (*Id.* (citing Tr. 260, 303.)) The ALJ acknowledged that Jennifer J. noted in June 2023 "that when she is in more pain than usual, she just wants to be alone; she does not want to be a burden." (*Id.* (citing Tr. 304).) He reviewed exams showing that she was "generally cooperative, polite, and well-groomed with normal speech and no psychosis." (Tr. 18-19 (citing Tr. 416, 421, 427, 449, 476, 2143, 2159, 2170, 2190).) The ALJ also found that Jennifer J. had "no limitation" with respect to "concentrating, persisting or maintaining pace." (Tr. 19.) He supported his finding with citations to exams showing "normal attention and concentration with ability to follow commands." (*Id.* (citing Tr. 416, 451, 453, 464, 565, 575, 941, 1740, 3427).) He also cited her self-report that she can follow written and spoken instructions and finish what she starts depending on her pain level at the time and that she reads and plays online social media games. (*Id.* (citing Tr. 260, 1772).) Reaching his conclusion that Jennifer J. had a mild limitation with respect to the fourth Paragraph B criteria—adapting or managing herself, he explained that she reported that she "gets depressed" and had a depressed mood at times, but also indicated that she was "okay at handling changes in routine and sometimes okay at handling stress . . . ." (Tr. 19 (citing Tr. 449, 453, 464).) Specifically, he

10

explained that Jennifer J. "experienced occasional suicidal ideation" and overdosed on medication in July 2022 after a breakup and again in January 2023 "due to difficulty handling stressors," but there was "no evidence of ongoing suicidal ideation" and she was "independent in activities of daily living, including self-care activities, cooking, cleaning, shopping, and doing laundry." (*Id.* (citing Tr. 745, 863, 1771-72, 2648, 3583).) Before proceeding to determine Jennifer J.'s RFC, the ALJ then explained that any limitations under the Paragraph B criteria "are not a residual functional capacity assessment" which "requires a more detailed assessment." (*Id.*) He also explained that his RFC "assessment reflects the degree of limitation" that he had "found in the 'paragraph B' mental function analysis." (*Id.*)

Jennifer J. counters the ALJ's severity findings by citing to record evidence of her diagnoses, her medications, her mental health treatment, her 2022 and 2023 hospitalizations for suicide attempts, her disability report, and her own testimony. (*See* ECF 9 at 3-5.) Although her brief includes citations to numerous pages in the record, Jennifer J. does not argue that the ALJ failed to consider any of the evidence that she cites. (*Id.*) Rather, the ALJ considered the same record in making his determination and reached a different conclusion. The Court cannot replace the ALJ's judgment with its own. *See Zirnsak*, 777 F.3d at 611. It is not enough that there is evidence in the record that would support a conclusion that is contrary to the ALJ's. *See Malloy*, 306 F. App'x 761. The Court can only ask whether there is enough record evidence to allow a "reasonable mind" to find that the ALJ's assessment was adequate. *See Pierce*, 487 U.S. at 565. There is.

11

Jennifer J. also argues that substantial evidence is lacking because, in her view, the ALJ did not afford sufficient weight to the opinions of the state agency psychologists who are "highly qualified" and "experts in Social Security disability evaluation." (ECF 9 at 5-7 (citing 20 C.F.R. §§ 404.1513a(b)(1), 416.913(a)(b)(1).)  Dr. Cowan found that Jennifer J. suffered from severe mental impairments and imposed moderate restrictions with respect to concentrating, persisting, and maintaining pace, and adapting or managing herself. (Tr. 54-55, 65-66.) More specifically, she assessed moderate limitations with respect to working in coordination with or in proximity to others without being distracted by them; responding appropriately to changes in the work setting; and completing a normal workday or workweek without interruptions from psychological symptoms and performing at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 58-59, 69-70.)  She found that Jennifer J. could "perform one- or two-step, routine tasks in a stable environment."  (Tr. 59, 70.)  Dr. Cowan's assessment also noted that Jennifer J. did "not participate in psychotherapy," and her symptoms were "improving with treatment." (Tr. 59, 70.)

Dr. Martin found that Jennifer J. suffered from severe mental impairments and imposed moderate restrictions with respect to certain aspects of her ability to interact with others, concentrate and persist, and adapt or manage herself.  (Tr. 77, 83, 91, 97.)  Dr. Martin's assessment explained that Jennifer J.'s basic memory processes were intact.  (Tr. 84.) She could understand, retain, and follow simple instructions; make simple decisions without special supervision; perform simple, routine, repetitive tasks in a stable environment; and perform within a schedule and at a consistent pace.  (*Id*.)  Dr. Martin

also explained that Jennifer J. was "able to maintain socially appropriate behavior" and "an acceptable level of personal hygiene." (*Id.*) She could ask simple questions, accept instruction, interact appropriately with the general public, get along with others without distracting them, and exercise appropriate judgment. (*Id.*)

Jennifer J. argues that the state agency psychologists' opinions that her mental impairments were severe were "consistent with the medical evidence," and that the ALJ could not substitute his lay opinion for theirs. (ECF 11 at 2.) However, the ALJ was not required to give Dr. Cowan or Dr. Martin's opinions any particular weight. *See* 20 C.F.R. §§ 404.1520c(a), 416.416.920c(a). Instead, he was required to explain how he had considered their opinions and how persuasive he found them to be. 20 C.F.R. §§ 404.1520c(a) and (b)(1); *id.* §§ 416.920c(a) and (b)(1). He did. The ALJ's decision clearly weighed both psychologists' opinions and found that they were "not persuasive" because the record did "not establish a mental health impairment that significantly restrict[ed] Jennifer J.'s] ability to perform basic work-related activities for a period of at least twelve months . . . ." (Tr. 23.) He explained that the record showed that Jennifer J. "often denied having diminished concentration, and exams repeatedly show [she] had normal concentration. (*Id.* (citing Tr. 414, 416, 424, 436, 451, 470, 488, 493).) He also noted that she had denied having any problems paying attention or following instructions. (*Id.* (citing Tr. 303).) He did not make his decision in the absence of evidence, he did so in view of the entire record, including abundant medical records. It is the ALJ—"not treating or examining physicians or State agency consultants"—who ultimately determines whether a claimant is disabled. *Chandler*, 667 F.3d at 361. Mindful that the

Court may not substitute its "own judgment for that of the factfinder," *Zirnsak*, 777 F.3d at 611, the ALJ's analysis is supported by "such relevant evidence as a reasonable mind might accept as adequate to support" his determination. *Biestek*, 587 U.S. at 103. Remand is not required based on his treatment of Dr. Cowan and Dr. Martin's opinions.

Even if the ALJ had erred at step two, and he did not, he did not end his disability inquiry there. The ALJ continued to consider Jennifer J.'s depression and anxiety in determining her RFC at step four, acknowledging his obligation to "consider all of the claimant's impairments, including impairments that are not severe." (Tr. 26 (citing 20 C.F.R. §§ 416.920(e) and 416.945).) The analysis at step two is "wholly independent" of the analysis at later steps, and thus "not finding certain impairments severe at step two does not affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r of Soc. Sec.*, 805 F. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter that remainder of the five-step process, much less the overall outcome."); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [claimant's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford*, 399 F.3d at 553). Any erroneous conclusion that Jennifer J.'s mental impairments were non-severe was harmless because the ALJ considered them in crafting her RFC. Remand is not required based on this argument.

**B.      The ALJ Did Not Err by Failing to Consider the Impact of Mild Mental Limitations on Jennifer J.'s Ability to Perform Her Skilled Past Relevant Work.**

As explained above, when considering the Paragraph B criteria at step two of his analysis, the ALJ found that Jennifer J. had a "mild limitation" in adapting or managing herself. (Tr. 19.) Jennifer J. also argues remand is required because the ALJ did not consider the impact that her mild limitations with adapting or managing herself would have on her ability to perform the duties of a bookkeeper. (ECF 9 at 8.) She contends the ALJ's RFC determination and his hypothetical question to the VE should have included additional restrictions based on her mild limitation. (*Id.*) The Commissioner responds that the ALJ properly found that she could return to her past relevant work because her non-severe mental impairments required no additional limitations in the RFC or restrictions in the hypothetical question posed to the VE. (ECF 10 at 13.) Jennifer J.'s argument on this issue is not well taken.

In *Hess v. Commissioner of Social Security*, the Third Circuit explained that "[w]hile form is not irrelevant in the scripted analytical steps called for when determining if someone is disabled," an ALJ need not "chant every magic word correctly" to avoid the remand of "an otherwise thorough and well-reasoned opinion . . . ." 931 F.3d 198, 200 (3d Cir. 2019). "[N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three." *Id.* at 209. Steps two and three and steps four and five "serve distinct purposes and may be expressed in different ways." *Id.* "Unlike the findings at steps two and three, the RFC must be expressed in terms of work-related functions" and the step two and three findings "will not necessarily

15

translate to the language used at steps four and five." *Id.* At step four, "a wide range of limitation language is permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained." *Id.* To withstand remand, an "ALJ's statement of the claimant's limitation in the final analytical steps" need only "be sufficient to reflect all of a claimant's impairments." *Id.* at 210.

Instead of applying *Hess*, Jennifer J. argues that the relevant law is "clear" and relies on *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), a 2013 Tenth Circuit decision that, in her view, has "perhaps explained [it] best." (ECF 11 at 2.) She argues that *Wells* requires a narrative discussion of the claimant's mental impairments and the functional limitations they caused," including any mild limitations, "regardless of whether the mental impairments in question were non-severe." (*Id.* at 2-3.) However, *Wells* does not bind this Court. Neither do any of the twenty-one other district court decisions that Jennifer J. cites on pages four and five of her Reply. (*Id.* at 4-5.) Of those, only four were decided in this District, with just four others decided by other district courts within the Third Circuit. (*Id.*) The rest are out-of-circuit authority. (*Id.*) Moreover, *Wells* predates the Third Circuit's binding decision in *Hess*, which the Commissioner's brief cites. (ECF 10 at 14.) Nevertheless, Jennifer J. does not address *Hess* anywhere in her papers, including in her Reply to the Commissioner's brief.[6] (*See* ECF 9, 11.) Rather, five of the eight in-Circuit decisions that Jennifer J. cites in her Reply predate *Hess*. *See Metelli v.*

---

[6] Jennifer J.'s attorney is reminded of the duty to disclose adverse authority to the Court under Rule 3.3(a)(2) of the Pennsylvania Rules of Professional Conduct. *See* Pa. R.P.C. 3.3(a)(2) (Candor Toward the Tribunal).

*Berryhill*, No. 16-6094, 2017 WL 2570913, at *1 (E.D. Pa. May 26, 2017); *Green v. Colvin*, 179 F. Supp. 3d 481 (E.D. Pa. 2016); *Kich v. Colvin*, 218 F. Supp. 3d 342 (M.D. Pa. 2016); *Balla v. Comm'r of Soc. Sec.*, No. 18-386, 2019 WL 2482661 (D.N.J. June 14, 2019); *Curry v. Comm'r of Soc. Sec.*, No. 15-7515, 2017 WL 825196 (D.N.J. Mar. 2, 2017). As for the other three in-circuit, post-*Hess* decisions she cites in her Reply, each fails to acknowledge *Hess* or to address its implications, limiting their persuasiveness. *See Leichter v. Kijazaki*, No. 20-6147, 2021 WL 5904619 (E.D. Pa. Dec. 13, 2021); *Meersand v. Kijakazi*, No. 20-1084, 2021 WL 5003331 (E.D. Pa. Oct. 28, 2021); *Carratura v. Saul*, No. 20-5483, 2021 WL 4077565 (D.N.J. Sept. 8, 2021). *Gunn v. Kijakazi*, 705 F. Supp. 3d 315 (E.D. Pa. 2023), which Jennifer J. cites to support her argument addressing this issue in her initial brief also omits any citation to *Hess* or discussion of its implications. (ECF 9 at 9-10.)

According to *Hess*, "the findings at steps two and three are important to the ALJ's statement of a claimant's limitation but do not require the use of any particular language." 931 F.3d at 209. What matters is that the ALJ's statement of the limitation is "sufficient to reflect all of a claimant's impairments." *Id.* at 210. So, an "ALJ's failure to include limitations related to mental impairments found mild at steps two and three does not necessarily result in error at step four." *Kring-Schreifels v. Kijakazi*, No. 22-110, 2023 WL 3097210, at *6 (E.D. Pa. Apr. 26, 2023).[7] Thus, in *Brumfield v. Saul*, the District Court accepted the ALJ's RFC assessment, which contained no work-related limitations based

---

[7] *King-Schreifels* was decided before Jennifer J. filed her briefs in this proceeding and the plaintiff there was represented by the same attorney. Nevertheless, Jennifer J. does not cite the decision in her papers.

on the claimant's non-severe mental health impairments, because it was "consistent with the substance of the analysis done at step two." No. 19-4555, 2020 WL 4934315, at *6 (E.D. Pa. Aug. 21, 2020). Evidence of the claimant's mental health impairments was "sparse," "limited," and "overwhelmingly normal." *Id.* In addition, "[a]fter concluding that [the claimant's] depression and anxiety were nonsevere impairments, the ALJ addressed the relationship between her severity analysis and the forthcoming RFC analysis." *Id.*

Similarly, in *King-Schreifels*, the court held that the ALJ did not err where she had "adequately addressed the mental health treatment evidence in the record in concluding that the functional impact of [the claimant's] mental health impairment was so slight that it did not require inclusion in the RFC assessment or the hypothetical posed to the VE" and "recognized and acknowledged the difference between the B criteria and the RFC assessment and affirmatively noted that she considered the limitation found in consideration of the B criteria in formulating the RFC assessment . . . ." 2023 WL 3097210, at *7.

Likewise, in *May v. Kijakazi*, although the claimant argued that the ALJ's opinion was not supported by substantial evidence because the ALJ "failed to reasonably explain her assessment of [the claimant's] RFC as to his mental limitations," the court found otherwise. No. 21-4055, 2023 WL 3097652, at *13 (E.D. Pa. Apr. 26, 2023).[8] The record revealed "generally unremarkable mental status examinations" and the ALJ, again,

---

[8] *May* also was decided before Jennifer J. filed her briefs in this proceeding and, as in *King-Schreifels*, the plaintiff there was represented by the same law firm as is Jennifer J. Jennifer J.'s briefs, however, include no reference to *May*.

18

"adequately addressed the mental health treatment evidence in the record in concluding that the functional impact of Plaintiff's mental health impairment was so slight that it did not require inclusion in the RFC assessment or the hypothetical posed to the VE . . . ." *Id.* at \*16; *see also Michael P. C. v. O'Malley*, No. 22-1406, 2024 WL 4008749, at \*5-6 (E.D. Pa. Aug. 30, 2024) (holding that "the ALJ did not err by failing to explicitly include her mild . . . Step Two findings in Plaintiff's RFC" where the ALJ "adequately considered all the evidence of Plaintiff's mental health impairments and understood their impact before determining Plaintiff's RFC").[9]

Here, the ALJ specifically explained that he considered all of Jennifer J.'s medically determinable impairments, *including those that are not severe*, when assessing" her RFC. (Tr. 17 (emphasis added).) He also explained that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and "the medical opinion(s) and prior administrative medical finding(s)" when determining Jennifer J.'s RFC. (Tr. 20.) He considered record evidence that shows that she was "usually cooperative calm, polite, friendly, and sociable." (Tr. 22.) He reviewed exam findings "consistently showing" that she was "fully oriented and alert with intact cognition, ability to obey commands, and normal memory, attention and concentration." (*Id.*) He also cited her repeated denials

---

[9] Michael P. also was represented by the same law firm as Jennifer J. His case was decided after she filed her initial brief in this proceeding, but before she filed her Reply. Nevertheless, there is no citation to it among the twenty-one cases she cites to support her argument on this point.

of "having diminished concentration." (*Id.*) The ALJ weighed the prior administrative medical findings of Dr. Cowan and Dr. Martin against other evidence in the record. (Tr. 23.) He also considered "mental status exams showing [that she] was generally alert, oriented, and cooperative with no psychosis, no ongoing suicidal/homicidal ideation, and normal memory, attention, and concentration . . . ." (*Id.*) Ultimately, Jennifer J. has not shown that the ALJ failed to properly capture all of her limitations, including limitations resulting from her mild mental impairments in reaching his determination that she retained the ability to perform the duties of her past relevant work as a bookkeeper. Remand is not required for further consideration at step four or five because, following *Hess*, the ALJ was not required to specifically include limitations associated with Jennifer J.'s mild impairment in adapting or managing herself when reaching his RFC determination.

## IV.   CONCLUSION

Upon review, the ALJ's decision and the underlying record show that his evaluation of Jennifer J. was appropriately supported by "such evidence as a reasonable mind might accept as adequate . . . ." *Biestek*, 587 U.S. at 103. Keeping in mind that the threshold for "evidentiary sufficiency is not high," *id.*, and for the reasons stated above, Jennifer J.'s request for review is **DENIED**. The Commissioner's final decision is **AFFIRMED** and this matter is **DISMISSED**.

An appropriate Order follows.